## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ALICIA R. MCPETERS,<br>　　　　　Appellant, | DOCKET NUMBER<br>SF-0752-13-0240-I-1 |
| 　　　v. | |
| DEPARTMENT OF DEFENSE,<br>　　　　　Agency. | DATE: October 21, 2014 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Bobbie Bowling, and Clifford H. Thomas III, Stockton, California, for the
appellant.

Nancy C. Rusch, Esquire, Stockton, California, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1　　　The agency has filed a petition for review of the initial decision, which reversed the appellant's removal. For the reasons discussed below, we GRANT the agency's petition for review, REVERSE the initial decision, and SUSTAIN the appellant's removal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

¶2      The appellant was removed from her position as a Distribution Process Worker, WG-6901-05, at the Defense Logistics Agency in San Joaquin, California. MSPB Docket No. SF-0752-13-0240-I-1, Initial Appeal File (0240 IAF), Tab 1, Tab 6, Subtab 4a. She was removed on grounds of failure to comply with the Drug Free Workplace Program (DFWP) and disruption in the workplace. *Id.*, Tab 6, Subtabs 4d, 4f.

¶3      The appellant was initially appointed to the federal service effective February 17, 2009. *Id.*, Subtab 4a. On December 14, 2010, she received a leave restriction letter advising that her leave records showed "a frequent and unpredictable pattern of tardiness and unscheduled leave." *Id.*, Subtab 4hh. On October 3, 2011, she received a 5-day suspension, mitigated to a 1-day suspension, for absence without leave (AWOL) and failure to request leave in accordance with established procedures. *Id.*, Subtabs 4u-4v. The agency offered, and the appellant signed, an agreement to hold the suspension in abeyance for 1 year. *Id.*, Subtab 4u at 3-4. On October 31, 2011, however, the agency imposed the suspension because of "numerous instances of not calling in within two hours of [her] shift, tardiness, and [being] charged with 19.50 hours of [AWOL] for [pay period ending] October 22, 2011." *Id.*, Subtab 4t. The agency issued a 1-year addendum to her leave restriction letter on December 14, 2011. *Id.*, Subtab 4j.

¶4      On December 20, 2011, the agency proposed to suspend the appellant for 30 days. *Id.*, Subtab 4i. The agency charged her with failure to request leave in accordance with established procedures, failure to follow instructions, AWOL, and a first offense of illegal drug use. *Id.* The appellant had tested positive for amphetamines, cocaine, and methamphetamines following a forklift accident.[2] *Id.*; *see id.*, Subtab 4k; *see also McPeters v. Department of Defense*,

---

[2] The appellant's position is subject to mandatory drug testing. 0240 IAF, Tab 6, Subtab 4kk. Employees subject to mandatory drug testing may be tested based on reasonable suspicion of drug use or in connection with serious accidents. *Id.* at 1.

MSPB Docket No. SF-0752-12-0556-I-1, Initial Appeal File (0556 IAF), Tab 16, Initial Decision (Sept. 20, 2012) (0556 ID);[3] 0556 IAF, Tab 5, Subtab 4n.[4]

¶5     The appellant agreed to serve the suspension.  She waived her grievance and Board appeal rights and requested that the suspension begin on January 13, 2012.  0556 IAF, Tab 5, Subtab 4m.  Her suspension ended on February 11, 2012. *Id.*, Subtabs 4l-4k.  Under the agency's DFWP instruction,[5] the appellant also was required "to successfully complete a certified rehabilitation program" for substance abuse arranged through the agency's Employee Assistance Program (EAP) and to undergo follow-up testing.  0240 IAF, Tab 6, Subtab 4i at 3; *see also* 0240 IAF, Tab 6, Subtab 4h.

¶6     The appellant returned to duty on February 13, 2012.  *See* 0556 IAF, Tab 5, Subtab 4i.  On February 15, 2012, she was 6 minutes tardy and charged .25 hours of AWOL.  *Id.*  On subsequent days, she failed to call in to request leave and either reported late or failed to report at all.  *Id.*, Tab 5, Subtabs 4e, 4h, 4i.  The agency thus proposed and removed the appellant on grounds of failure to request leave in accordance with established procedures, AWOL, and failure to follow instructions.  *Id.*, Subtabs, 4b-4c.  She was removed from the agency effective May 5, 2012.  *Id.*, Subtab 4a.

¶7     The appellant filed a Board appeal.  0556 IAF, Tab 1.  The administrative judge reversed the agency action, finding that the deciding official inappropriately considered ex parte communications arising from absences that

---

Additionally, these employees are "subject to periodic, unannounced drug testing to ensure that they remain drug-free." *Id.* at 3.

[3] The initial decision became the final decision of the Board when neither party filed a petition for review.

[4] Because the appellant appealed the removal, a Board record exists.  We take official notice of that record.  *See* 5 C.F.R. § 1201.64 (The Board may "may take official notice of matters of common knowledge or matters that can be verified. . . . The taking of official notice of any fact satisfies a party's burden of proving that fact.").

[5] *See* 0240 IAF, Tab 6, Subtab 4jj.

occurred after the proposal notice had been issued. 0556 ID at 6-11. The appellant was reinstated and awarded back pay and other benefits. 0556 ID at 12-13. She returned to duty on October 23, 2012. *See* 0556 ID; *see also* 0240 IAF, Tab 6, Subtab 4f at 1. On November 14, 2012, the agency proposed her removal on grounds of failure to comply with the DFWP and disruption in the workplace. 0240 IAF, Tab 6, Subtab 4f. She was removed effective February 9, 2013. *Id.*, Subtab 4d. This appeal followed. 0240 IAF, Tab 1.

¶8    The administrative judge construed the charge of failure to comply with the DFWP as containing two specifications, explaining that the agency alleged two distinct types of noncompliance with the mandatory treatment program. 0240 IAF, Tab 38, Initial Decision (Jan. 2, 2014) (0240 ID) at 8. She declined to sustain both specifications of that charge, as well as the single specification of disruption in the workplace. 0240 ID at 17, 19, 23. The appellant argued that the agency committed harmful error by failing to give her adequate notice of the dates upon which she failed to comply with the DFWP. The administrative judge rejected that argument. 0240 ID at 24. The administrative judge reversed the agency's removal action and ordered the appellant's reinstatement. 0240 ID at 24-25.

¶9    The agency filed a petition for review.[6] Petition for Review (PFR) File, Tab 1. On review, the agency argues that the administrative judge abused her discretion when she split the charge of failure to comply with the DFWP into two specifications. *See id.* at 9-10. In explaining her decision, the administrative judge cited the Board's long-held principle that "when a single stated charge contains two acts of misconduct that are not dependent upon each other and do not comprise a single, inseparable event, each act constitutes a separate charge." 0240 ID at 8 (quoting *Walker v. Department of the Army,* 102 M.S.P.R. 474, ¶ 7 (2006)). The agency asserts that the administrative judge construed the

---

[6] The appellant did not respond to the petition for review.

charge hyper-technically, effectively forgiving the appellant for documented noncompliance. PFR File, Tab 1 at 10. The agency also argues that the language of the proposal notice shows it had intended the charge to be construed as a single specification. *Id.* at 11.

¶10    The administrative judge did not abuse her discretion when she split the first charge into two specifications. The Board generally may not split a single charge into several independent charges and then sustain one of the newly-formulated charges representing only a portion of the original charge. *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990); *see, e.g.*, *Acox v. U.S. Postal Service*, 76 M.S.P.R. 111, 113-14 (1997) (Board could not split charge of "verbal abuse and physical threats made to another employee"; the agency was required to prove both verbal abuse and physical threat). If the agency cannot prove one or more of the elements of its original charge, the Board cannot sustain the charge. *Burroughs*, 918 F.2d at 172. In contrast, the Board *may* split a charge when the agency has set forth more than one event, act, or factual specification in support of the charge. *Id.*

¶11    Such is the case here. The single charge of failure to comply with the DFWP may be reasonably divided into two independent series of events representing two distinct forms of noncompliance. As the administrative judge divided the charge, the first specification pertained to the appellant's failure between January and March 2012, to attend many of the mandatory substance abuse treatment sessions and 12-step recovery meetings for the outpatient program in which she was enrolled. 0240 ID at 8. The second specification pertained to the appellant's failure to comply with her counselors' recommendation to enroll in a residential treatment program and her failure to attend meetings scheduled to work out the details of her admission to residential treatment. 0240 ID at 8. Although these series of events occurred sequentially, they are distinguishable, independent, and separable. *See Walker*, 102 M.S.P.R. 474, ¶ 7; *cf., e.g.*, *Chauvin v. Department of the Navy*, 38 F.3d 563, 565 (Fed. Cir.

1994) (finding that unauthorized possession of a metal plate and attempted removal of the plate from a shipyard were independent and separable acts). The appellant's counselors could have reasonably terminated their efforts to assist her based on her repeated nonattendance during outpatient treatment. They need not have extended an offer to help her to enroll in an inpatient treatment program. Further, the meetings that she failed to attend during outpatient treatment—group therapy sessions and 12-step program meetings—differ functionally from the office appointments she missed when her counselors were seeking to enroll her in suitable inpatient treatment. Outpatient and inpatient programs are also two distinct types of treatment for substance abuse.

¶12     The agency argues that the administrative judge should have sustained the first specification of the charge because the appellant was out of compliance long before her primary counselor notified the agency of her failure to comply. PFR File, Tab 1 at 10-11, 13-14. We agree. Under Executive Order 12,564, the legal authority upon which the agency relied:

> (d) Agencies shall initiate action to remove from the service any employee who is found to use illegal drugs and:
>
> > (1) Refuses to obtain counseling or rehabilitation through an Employee Assistance Program; or
> >
> > (2) Does not thereafter refrain from using illegal drugs.

Drug-Free Federal Workplace, Exec. Order No. 12,564 § 5(d), 51 Fed. Reg. 32,889, 32,891 (Sept. 15, 1986). The agency's implementing procedures require that employees mandatorily referred to EAP owing to drug use or possession "remain compliant with requirements related to rehabilitation/treatment . . . in order to be considered successful." 0240 IAF, Tab 6, Subtab 4jj at 8. Under the applicable procedures, the agency "will initiate action to remove the employee" if "appropriate medical officials within the EAP structure report, in writing, that the employee is non-compliant during rehabilitation/treatment." *Id.*

¶13     The agency's EAP services provider, Magellan Health Services, referred the appellant to Anita Canepa, a Licensed Marriage and Family Therapist, to develop

and monitor her treatment plan and to evaluate her compliance with the plan. 0240 IAF, Tab 30 at 12. Ms. Canepa developed a 36-week plan for outpatient treatment that required the appellant to attend three 1-hour therapy sessions per week at St. Joseph's Behavioral Health Center and five 12-step or recovery support program meetings per week. *Id.* at 1-2. After the appellant missed several meetings, the appellant's substance abuse counselor discharged her from the outpatient treatment program, recommending that she would be best served by entering an inpatient treatment facility. *Id.* at 3. The appellant failed to enroll in inpatient treatment, and Ms. Canepa informed her by a letter dated June 4, 2012, that she was closing her case file for lack of compliance with the agreed-upon attendance schedule. 0240 IAF, Tab 6, Subtab 4g. This is the letter upon which the agency relied in proposing to remove the appellant. *See id.*, Subtab 4f at 1.

¶14    The administrative judge explained that the agency's decision to remove the appellant was based solely on the June 4, 2012 letter. 0240 ID at 9. The agency lacked access to the appellant's treatment program records until the administrative judge ordered Ms. Canepa to produce them at the hearing. 0240 ID at 9; *see* 0240 IAF, Tab 17 at 4-5, Tabs 29-30. The agency thus did not learn the full details of the appellant's noncompliance until after removing her. 0240 ID at 9-10, 12, 17. The administrative judge explained that the appellant's compliance, or lack thereof, "is a status which must be assessed by the appropriate medical personnel under the agency's DFWP program" because "a plain reading of the agency's rules . . . states that the agency will initiate disciplinary action 'if appropriate medical officials within the EAP structure report, in writing, that the employee is noncompliant.'" 0240 ID at 17 (quoting 0240 IAF, Tab 6, Subtab 4jj at 8). She found that the June 4, 2012 letter constituted a writing by an "appropriate medical official[ ] within the EAP structure" that the appellant had been noncompliant "during rehabilitation/treatment" but that the date of the finding of noncompliance, June 4, 2012, did not support the agency's assertion that she was noncompliant

from January through March 2012. 0240 ID at 17; *see* 0240 IAF, Tab 6, Subtab 4g, Subtab 4jj at 8. Because the appellant was removed from federal service effective May 5, 2012, she explained, "the agency was without authority to require the appellant to attend the EAP program as a condition of her employment after that date."[7] 0240 ID at 17. She thus concluded that the agency failed to meet its burden of proof that the appellant was noncompliant with the DFWP at any time prior to her removal. 0240 ID at 17.

¶15    The administrative judge's analysis is flawed. The June 4, 2012 letter specifically documents the appellant's noncompliance during January, February, and March 2012. For example, regarding the month of February, the letter states, "Mr. [Don] Sims again reported you none-compliant [sic] stating you attended [Intensive Out-Patient] treatment sessions only twice in this month on 2/9/12 & 2/10/12."[8] 0240 IAF, Tab 6, Subtab 4g. That the letter was issued subsequent to the appellant's May 5, 2012 removal is immaterial. In the September 20, 2012 initial decision that became the final decision of the Board, the administrative judge ordered the agency to *cancel* her removal and retroactively restore her effective May 5, 2012. 0556 ID at 12. In our assessment, the agency would not have lacked the authority to require the appellant to attend the EAP-sanctioned drug treatment program. *Cf. Cooper v. Department of the Navy*, 108 F.3d 324, 326 (Fed. Cir. 1997) (finding that the agency's cancellation of removal action and expungement of all references from the personnel file "eliminated all the consequences of that action" and thus rendered the appeal moot). Accordingly, we conclude that the agency met its burden of proof regarding the first specification of the charge.

---

[7] "The Federal Government has a compelling proprietary interest in establishing reasonable conditions of employment. Prohibiting employee use of illegal drugs is one such condition." 0240 IAF, Tab 6, Subtab 4jj at 1.

[8] Mr. Sims was the appellant's substance abuse counselor at St. Joseph's Behavioral Health Center. *See* 0240 IAF, Tab 30 at 3.

¶16    The agency argues that the administrative judge improperly failed to sustain the second specification as well. *See* PFR File, Tab 1 at 11-13. We need not address those arguments. If a charge is supported by multiple specifications, then proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge. *Burroughs*, 918 F.2d at 172. We thus sustain the charge of failure to comply with the DFWP.

¶17    Likewise, we need not delve into the agency's arguments regarding the administrative judge's failure to sustain the second charge, disruption in the workplace, including the agency's assertions that she abused her discretion by excluding or discounting some of the testimony. *See* PFR File, Tab 1 at 14-16. The sustained charge alone is sufficient to warrant the appellant's removal. *Cf. Luciano v. Department of the Treasury*, 88 M.S.P.R. 335, ¶ 10 (2001) (declining to address agency's arguments regarding unsustained specifications where the sustained specifications and other sustained charge supported removal), *aff'd*, 30 F. App'x 973 (Fed. Cir. 2002); *see Alvarado v. Department of the Air Force*, 103 M.S.P.R. 1, ¶ 29 (2006) (determining that, although the administrative judge's rulings prevented the agency from presenting some evidence, remand was unnecessary because the sustained charge supported the penalty determination), *aff'd*, 626 F. Supp. 2d 1140 (D.N.M. May 4, 2009), *aff'd*, 490 F. App'x 932 (10th Cir. 2012).

¶18    The record shows that the appellant occupied a testing-designated position subject to random drug testing, and, further, the agency had reasonable cause to drug test her because she had been involved in the forklift accident. 0240 IAF, Tab 6, Subtabs 4k, 4kk. The agency thus established nexus. *See Burkwist v. Department of Transportation*, 26 M.S.P.R. 427, 428-30 (1985) (sustaining a 90-day suspension for violating rules of a private drug rehabilitation program during off-duty hours, citing safety requirements for the appellant's position).

¶19    As for the penalty, the Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised

management discretion within tolerable limits of reasonableness. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (listing twelve factors relevant to the reasonableness of an agency's chosen penalty). When not all of the charges are sustained, the Board will consider carefully whether the sustained charges merited the penalty imposed by the agency. *Id.* at 308. When the Board sustains fewer than all of the agency's charges, the Board may mitigate the agency's penalty to the maximum reasonable penalty so long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999).

¶20    Here, the agency has not indicated that it desires a lesser penalty to be imposed, and we find removal to be the maximum reasonable penalty for the sustained charge. Drug offenses are considered to be serious offenses and agencies have a primary responsibility in ensuring a drug-free workplace. *See generally* Exec. Order No. 12,564. The Board has affirmed removals for a first drug-related offense, even when the employee has a long record of federal service. *See, e.g.*, *Lazenby v. Department of the Air Force*, 66 M.S.P.R. 514, 520-21 (1995) (17-year employee's use of cocaine during self-referred rehabilitation program was sufficiently serious to warrant initiation of removal procedures). In contrast, the appellant has a relatively short history of federal service that includes a significant disciplinary record calling into question her reliability as an employee. She knew that she was subject to drug testing by virtue of her position, and that she had specific obligations under the agency's DFWP and her treatment program. 0240 IAF, Tab 6, Subtabs 4h-4i, 4kk-4ll, Tab 30 at 1-2, 7, 9, 20, 42. She also knew that she was not in compliance with the program. *See* 0240 IAF, Tab 30 at 7-8, 10. She failed to achieve compliance even after the EAP providers repeatedly warned her about noncompliance and offered her several opportunities to change her behavior. *Id.* at 2, 7-10, 20, 23-24, 26-30, 36, 38-41. The record shows that the appellant experienced

significant personal difficulties during the treatment program.  For example, her intake forms indicate she may have suffered from clinical depression, and she self-reported that she was experiencing financial difficulties and lived with an abusive domestic partner who also used drugs.  *Id.* at 36, 38, 40-41, 52-53, 57-58.  We find that, while these are mitigating factors, they would not bode well for her rehabilitation potential.

¶21        Accordingly, the agency's petition for review is GRANTED, the initial decision is REVERSED, and the appellant's removal is SUSTAINED.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm.  Additional information is available at the court's

website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and <u>Forms</u> 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: 　　　　　　　 _____
　　　　　　　　　　　　　　　 William D. Spencer
　　　　　　　　　　　　　　　 Clerk of the Board

Washington, D.C.