**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ANGEL H. ALVARADO, JR.,

      Plaintiff-Appellant,

v.

MICHAEL B. DONLEY, Secretary,
Department of the Air Force,

      Defendant-Appellee.

No. 11-2036
(D.C. No. 1:06-CV-00807-JB-ACT)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge**, GORSUCH**, and **MATHESON**, Circuit Judges.

The Air Force fired Angel Alvarado, saying he refused to follow his supervisors' orders while working as an inspector in the motor pool at Kirkland Air Force Base. Mr. Alvarado says he was really fired because of his race. After hearing evidence from both sides, the Merit Systems Protection Board eventually sided with the Air Force. Later, the district court did the same. After careful consideration, we do as well.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The tensions giving rise to this case date back to the 1990s. By that time, Mr. Alvarado was already a long-time civilian Air Force employee. He worked as a maintenance inspector — responsible for ensuring that vehicles brought into the motor pool shop were properly repaired, serviced, and safe to drive. By all reports, he was good at the job. Then, in 1997 or 1998 (the record doesn't say exactly when), an opportunity for promotion came along. The unit needed a new Vehicle Maintenance Officer, someone in charge of overall vehicle maintenance. Mr. Alvarado applied for the job, but didn't get it. Instead, the promotion went to Michael Rariden, another employee and a white man. Believing he didn't get the job because he's Mexican-American, Mr. Alvarado filed an EEO complaint. And though this original complaint soon settled, two more shortly followed, one against Mr. Alvarado's direct supervisor and one against Mr. Rariden, both alleging reprisals for filing the previous complaint.

The record isn't clear exactly what became of all this, but it is clear that Mr. Alvarado remained dissatisfied with Mr. Rariden's leadership — particularly with changes Mr. Rariden made to the shop's quality control system. Before Mr. Rariden took over, mechanics were allowed 6 mistakes ("rejects") per year in repairing vehicles. Inspectors, like Mr. Alvarado, weren't themselves inspected. But in 2000 Mr. Rariden changed the system, increasing the number of allowable rejects to 12 *and* charging inspectors with rejects they failed to catch. Mr. Alvarado thought this was unfair because the change was made without union

approval and because he felt that personnel cutbacks made it impossible for him to inspect all the out-going vehicles. For his part, Mr. Rariden expressed frustration with Mr. Alvarado — particularly the time he spent dealing with union issues. But whatever their professional disagreements, the first couple years of the new appraisal system went more or less without trouble.

Things changed in 2002. During the first two and a half months of the 2002-2003 rating period, Mr. Alvarado incurred 12 rejects — enough to fire him if he incurred any more. Under the terms of his union's collective bargaining agreement, though, he was given an "opportunity period" — a month during which he would receive additional training and demonstrate the ability to perform. If he passed the opportunity period without more than 4 rejects, no further disciplinary action would be taken.

At first, all looked good. Mr. Alvarado worked with Randy Rettinger, his first line supervisor, as well as with Mr. Rariden to ensure he understood their standards; he successfully inspected many vehicles; and he incurred no rejects. But then, on a day when Mr. Rettinger wasn't in the office and Mr. Alvarado had reason to think his work wouldn't be reviewed, a problem erupted. Mr. Rariden decided to review Mr. Alvarado's work himself. And when he did, he found 6 rejects on a single vehicle, rejects so obvious, according to Mr. Rariden, that it was clear Mr. Alvarado hadn't bothered to do his job at all when he thought Mr. Rettinger wouldn't be looking: "the things that I saw were so obvious that if

anybody would have went out and looked, they would have [seen them]." Aplt. Appx. Vol. V at 2014. And it didn't stop there. After being told he had failed the opportunity period, Mr. Alvarado continued to incur rejects, eventually incurring 24 rejects between April and September of 2002. To Mr. Rettinger and Mr. Rariden, that number of rejects was evidence Mr. Alvarado had just decided to quit complying with the inspection system and would not do his job unless actively supervised. "As a matter of fact," Mr. Rariden testified, Mr. Alvarado "told me several times that he didn't feel that his work should be subjected to inspections because he is the inspector." *Id.* at 2015. And *that*, Mr. Rettinger and Mr. Rariden decided, constituted "insubordinate defiance of authority" and a firing offense.

Mr. Alvarado has a different perspective on what happened. Many of the alleged "rejects," he says, weren't true failures at all — just made-up defects. And any actual failures, he adds, were caused by a heavy workload and insufficient personnel. He argues that what was really going on was that Mr. Rariden wanted him out because he was Mexican-American and had filed EEO complaints.

Mr. Alvarado initially appealed his firing to the Merit Systems Protection Board. After lengthy proceedings before two different administrative law judges, the Board concluded that the Air Force had met its burden of proving "insubordinate defiance of authority." Dissatisfied with the result, Mr. Alvarado

appealed the Board decision to the district court and filed a new Title VII action claiming racial discrimination and retaliation. The court, however, found that the record supported the Board's ruling on the "insubordinate defiance of authority" charge. And on the Title VII claims the court concluded at summary judgment that Mr. Alvarado failed to identify any material dispute of fact that might sustain them. It is these rulings now on appeal before us.

Taking first things first, we consider the Board's decision. In doing so though, we do not start afresh. Our review of the Board's decision is authorized by 5 U.S.C. § 7703(c), which requires us to uphold the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *See also Romero v. Dep't of the Army*, 708 F.2d 1561, 1563 (10th Cir. 1983). Under these standards, our review is "very narrow." *Id.* The "arbitrary and capricious" standard makes clear we may not substitute our judgment for the Board's. *See Wilder v. Prokop*, 846 F.2d 613, 619 (10th Cir. 1988). And the "substantial evidence" standard requires us to affirm whenever there is evidence "a reasonable mind might accept as adequate to support [the Board's conclusion]," whether or not we agree with it. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Brewer v. U.S. Postal Service*, 647 F.2d 1093, 1096 (Ct. Cl. 1981).

Though the original charge against Mr. Alvarado contained some confusing language, *see* Aplt. Appx. at 2336, Mr. Alvarado does not now dispute that he was properly charged with "insubordinate defiance of authority."  Neither does he dispute that under this charge the Air Force was required to show that he "willfully and intentionally" refused to obey an employer's order and that he exhibited "defiant or insolent behavior" in doing so.  And he declines to challenge now the Board's finding that he did, in fact, willfully and intentionally refuse to perform the work ordered.  So it is that the only question before us is whether substantial evidence exists to support the Board's finding that he "acted with insolence or defiance."  Aplt. Br. at 17.

We are persuaded substantial evidence exists to support that conclusion. The evidence before the Board suggested that Mr. Alvarado was capable of performing his job.  It suggested Mr. Alvarado resented being subject to supervision under the new inspection system.  It suggested some of the mistakes he made were so obvious that he would have seen them had he performed *any* inspection.  And it suggested Mr. Alvarado refused to participate in his employer's mandated inspection regime, especially when no one was looking.  All this supports an inference he not only willfully refused to perform assigned work but that he acted in defiance of his employer's authority.

To be sure, we recognize contrary evidence exists in the record, including Mr. Alvarado's attribution of his performance issues to a high workload and lack

of resources.  And we recognize that not every fact finder would necessarily conclude Mr. Alvarado's conduct evinced defiance or insolence.  But the question before us isn't who we believe most persuasive but only whether there is substantial evidence — evidence which a reasonable mind could accept as adequate  — to support the Board's findings.  Because there is, we must reject the appeal.

Turning to Mr. Alvarado's Title VII discrimination claim, we move quickly to the question of pretext.  The Air Force concedes Mr. Alvarado can make out a prima facie case of discrimination.  And, as our earlier discussion shows, the Air Force offers a legitimate, non-discriminatory reason for firing him.  Because, as well Mr. Alvarado advances no *direct* proof of racial discrimination, to survive summary judgment he must present circumstantial evidence sufficient to create a genuine issue of material fact on the question whether the Air Force's stated justification is really just pretext for discrimination.  *See Johnson v. Weld County*, 594 F.3d 1202, 1210-11 (10th Cir. 2010). We agree with the district court that the facts in evidence fail to supply that necessary inference.

Mr. Alvarado relies largely on his own testimony relating statements by others who, in turn, purported to relate to him allegedly racist remarks by Mr. Rariden.  The problem is, the district court ruled all this evidence inadmissible hearsay and Mr. Alvarado does not even attempt to suggest any error in that

ruling. *See id.* at 1209 ("[W]e can consider only admissible evidence in reviewing an order granting summary judgment.") (quotation marks omitted).

The only potentially racist remark Mr. Alvarado heard himself and which was admissible in evidence was a joke using the word "Mexican" Mr. Rariden told a group at a bar. But Mr. Alvarado acknowledges he did not actually hear the whole joke, and even granting that it was in fact a racist joke, Mr. Alvarado acknowledges that "[e]vidence of racial comments is not probative of discrimination unless it is linked to relevant personnel actions." Aplt. Br. at 26 (citing *Figures v. Bd. of Pub. Utils.*, 967 F.2d 357, 360-61 (10th Cir. 1992)). Yet that is a link he fails to forge. He supplies no way in which the comment in question was linked to the challenged personnel actions, at least not without relying on the hearsay statements the district court ruled inadmissible.

Even so, Mr. Alvarado argues he can establish pretext by showing that other, non-Hispanic, employees weren't disciplined despite incurring a similar number of "rejects." And to be sure, disparate treatment of similarly-situated employees is often enough to create an inference of discrimination. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) ("A plaintiff may also show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness.").

The difficulty is that the two employees Mr. Alvarado points to were not "similarly situated" to him. The first, Mr. Whitlock, is a white employee whose rejects were *below* the allowable number per year — not *above* the limit, as was the case with Mr. Alvarado. The second, Mr. Jiron, is a Native American employee who did incur an impermissible 18 rejects between April and July 2002. But Mr. Jiron was a shop supervisor (not an inspector responsible for ferreting out mistakes) and he worked for a different supervisor. Of course, we must be wary of defining "similarly situated" so narrowly that employees are prevented from making even meritorious disparate treatment claims. But when it comes to Mr. Alvarado and Mr. Jiron, the distinguishing traits between them make it difficult under our precedents to infer that they were treated differently *because of* their race rather than because of these other factors. *See, e.g.*, *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) ("Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.") (quotation omitted); *see also Kendrick*, 220 F.3d at 1232 (fact that employees are subject to different disciplinary regimes indicates they are not "similarly situated"). And even beyond that difficulty, we note that Mr. Jiron *did* receive similar discipline for his deficiencies: as a non-union employee with no entitlement to the "opportunity period" afforded to union employees, he received an immediate written reprimand — surely a precursor to more severe discipline if his performance did not

improve. So *both* were disciplined and the only difference in the nature of the discipline appears to have been due to a bargained-for union entitlement Mr. Alvarado received and Mr. Jiron didn't.

Mr. Alvarado's remaining evidence of discrimination runs into similar problems. He points to testimony from one witness stating that Mr. Rariden scrutinized the performance of "Rael, Luero, and Jiron" more closely than the performance of other employees. This, Mr. Alvarado says, shows that Mr. Rariden was biased against Hispanics. But Mr. Jiron is not Hispanic, and he is the same employee Mr. Alvarado tries to suggest was treated *less* harshly when he incurred an impermissible number of rejects because he isn't Hispanic. Mr. Alvarado also neglects to mention that the same witness he relies on also testified that Mr. Rariden was concerned about nothing other than employees' work performance — regardless of race. Separately, Mr. Alvarado says two supervisors told him that Mr. Rariden disliked him and was "out to get him." But again, he offers no admissible evidence, direct or otherwise, that whatever dislike Mr. Rariden had for Mr. Alvarado was a consequence of (or even tangentially related to) Mr. Alvarado's race rather than his union activities, which the record clearly indicates caused much friction between the pair. Given all this, we agree with the district court that the testimony fails to give rise to a credible inference of pretext for racial discrimination.

Turning finally to Mr. Alvarado's Title VII retaliation claim, similar problems emerge. Title VII prevents an employer from discriminating against an employee "because he has opposed any practice *made an unlawful employment practice by [Title VII]*." 42 U.S.C. § 2000e-3(a) (emphasis added). And, because Title VII prohibits discrimination in employment, we have previously noted that the scope of the statute's anti-retaliation provision is limited to protection against retaliation for "protected" activity, that is, activity "in opposition to discrimination." *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). ("To establish a prima facie case of retaliation, a plaintiff must demonstrate . . . that he engaged in protected opposition to discrimination.").

The EEO complaints filed by Mr. Alvarado in the 1990s surely qualify as protected activity. *See Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004). But Mr. Alvarado has not plausibly suggested a causal connection between those protected EEO complaints and the decision to fire him. *See Argo*, 452 F.3d at 1202-03. To support his claim, he points only to the testimony of one witness indicating that Mr. Rariden was frustrated by Mr. Alvarado's union activity. But that witness also testified that Mr. Rariden was *not* frustrated by the EEO complaints, only by the time and effort required to deal with the issues Mr. Alvarado raised in his role as a union steward seeking to enforce the terms of its collective bargaining agreement as he interpreted it.

Further, as to these union activities there's no indication in the record that they were themselves "in opposition to discrimination." Instead, what evidence we have suggests those activities concerned unspecified employee grievances and union opposition to the new reject system imposed on inspectors as well as mechanics — an opposition based not on concerns relating to race but on concerns that the new reject system violated the union's collective bargaining agreement and created additional work for already taxed employees. So once again, while the evidence may suggest that Mr. Rariden disliked Mr. Alvarado's union activities, that fact is not by itself enough to support Mr. Alvarado's Title VII claim. *See Smith v. Potter*, 252 F. App'x 224, 229 (10th Cir. 2007) ("The union-grievance hearing was not protected opposition to discrimination and therefore not protected by Title VII.").

Time poses an additional problem for Mr. Alvarado's retaliation claim. He filed his EEO complaints almost three years before he was fired. His other, non-protected union activity — activity which upset his employer but which is not protected under Title VII — was much more recent. This fact, too, tends to negate rather than suggest a causal connection between Mr. Alvarado's firing and his *Title VII-protected* activity. *See, e.g.*, *Stover v. Martinez*, 382 F.3d 1064, 1074 (10th Cir. 2004) (holding two year lapse between protected activity and an alleged adverse action too attenuated to support an inference of causation).

Given all of this, we are compelled to agree with the Board and the district court.  Whatever interpersonal or collective bargaining disputes may have contributed to the decision to fire him, Mr. Alvarado has failed to meet his burden of showing that the Air Force's stated reasons for firing him were unsupported by substantial evidence or infected by racial bias or unlawful retaliatory intent under Title VII.  The judgment of the district court is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge