# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

HORACE LEE WILSON,
            Appellant,

            v.

DEPARTMENT OF THE ARMY,
            Agency.

DOCKET NUMBER
AT-0752-13-0551-I-1

DATE: December 4, 2014

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Horace Lee Wilson, Madison, Alabama, pro se.

Judith A. Fishel and Nathanael P. Causey, Redstone Arsenal, Alabama, for
    the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which
affirmed his removal for conduct unbecoming a federal employee.  Generally, we
grant petitions such as this one only when:  the initial decision contains erroneous
findings of material fact;  the initial decision is based on an erroneous

---

[1]  A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law.  Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions.  In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2    The agency removed the appellant from his position as a GS-11 Administrative Assistant in the Equal Employment Opportunity (EEO) office for multiple specifications of conduct unbecoming a federal employee.  Initial Appeal File (IAF), Tab 4 at 14 (Standard Form 50), 27-31 (decision letter), Tab 5 at 4-14 (proposal notice).  The agency proposal notice identified eight specifications alleging that the appellant:  (1) acted inappropriately in his dealings with a disabled student (K.H.) seeking employment through the Workforce Recruitment Program (WRP); (2) misled K.H. regarding her grade and start date and failed to reply to her emails attempting to verify her start date and grade; (3) led another WRP student (J.B.) to incorrectly believe that her internship had been extended and lied about obtaining approval for the extension to his supervisor and the WRP program manager (B.E.); (4) committed time card abuse or fraud; (5) used government resources to perform duties associated with his private company; (6) improperly accessed his supervisor's computer; (7) failed to perform his duties to an acceptable level; and (8) failed to follow

instructions or cooperate with the acting director of the EEO office. IAF, Tab 4 at 27, Tab 5 at 4-11. The deciding official sustained all of the specifications, except specification 6, and determined that removal was appropriate as the misconduct was extremely serious, frequently repeated, for personal gain, contrary to the mission of the EEO office, and harmful to others, especially the two disabled students. IAF, Tab 4 at 28-30.

¶3    The appellant appealed, arguing that the removal was based on false allegations and exaggerations. *See* IAF, Tab 1 at 3; *see also* IAF, Tabs 39, 44. After holding a hearing, the administrative judge affirmed the removal action, finding that: (1) specifications 1-5 and 8, but not specification 7, were supported by preponderant evidence;[2] (2) a nexus existed between the appellant's misconduct and the efficiency of the service; and (3) the penalty of removal was within the tolerable limits of reasonableness. IAF, Tab 45, Initial Decision (ID).

¶4    The appellant has filed a petition for review, asserting that he disagrees with administrative judge's findings and arguing that the administrative judge made numerous errors, failed to fully consider the evidence, mishandled the hearing, and favored the agency. *See* Petition for Review (PFR) File, Tab 1. The agency has responded in opposition. PFR File, Tab 7.

## ANALYSIS

<u>The administrative judge properly sustained the charge of conduct unbecoming a federal employee.</u>

¶5    A charge of "conduct unbecoming" has no specific elements of proof, but is established by proving that the employee committed the acts alleged in support of the broad label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). Where, as here, more than one event or specification supports a

---

[2] The administrative judge stated that the deciding official did not sustain specifications 6 and 7. ID at 9 n.4. We note, however, that the reference to specification 7 appears to be a typographical error. The deciding official did sustain specification 7, IAF, Tab 4 at 27, and the administrative judge expressly declined to sustain it because it lacked specific allegations of wrongdoing and specific evidence, ID at 9.

single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge. *See Alvarado v. Department of the Air Force*, [103 M.S.P.R. 1](#), ¶ 16 (2006), *aff'd*, 626 F. Supp. 2d 1140 (D.N.M. 2009), *aff'd*, 490 F. App'x 932 (10th Cir. 2012). As set forth below, we find that at least three of the specifications are supported by preponderant evidence, and accordingly, we discern no error in the administrative judge's decision to sustain the charge.

Specifications 1-3

¶6        Specifications 1, 2, and 3 relate to the appellant's alleged misconduct in his dealings with two disabled students, K.H. and J.B., seeking employment through the WRP.[3] K.H. did not testify at the hearing, but the administrative judge found her affidavit to be more credible than the appellant's hearing testimony, and thus, sustained specifications 1 and 2. ID at 2-5. Regarding specification 3, the administrative judge found the hearing testimony of B.E., the WRP program manager, to be more credible than the appellant's testimony because, in part, B.E. had "no reason" to tell J.B. that she had been extended if she had not. ID at 6. Thus, the administrative judge sustained specification 3 insofar as it charged the appellant with providing misinformation to B.E. regarding J.B.'s extension. ID at 5-6. On petition for review, the appellant argues that the administrative judge made erroneous credibility determinations and failed to consider relevant evidence. PFR File, Tab 1 at 11-14, 16-17. As discussed below, we have concerns regarding the credibility determinations underlying the administrative judge's decision to sustain these specifications.

---

[3] Specifications 1 and 2 allege such misconduct as the appellant failing to show up for a meeting with K.H.; asking her to pay for his lunch; asking her to follow him to a consignment store for no apparent reason; attempting to hug her without permission; leading her to believe that she would be offered a higher graded position and earlier start date than she ultimately received; and failing to reply to her emails attempting to verify the start date. IAF, Tab 5 at 4-5. Specification 3 alleges that the appellant led J.B. to incorrectly believe that her internship had been extended and lied about obtaining approval for the extension to his supervisor and B.E. *Id.* at 6.

¶7 Regarding specifications 1 and 2, we note that, among other things, the administrative judge failed to address the fact that, as part of an internal agency investigation, an investigator interviewed the appellant and K.H. multiple times each and found them both to be equally credible.[4] *See* IAF, Tab 6 at 27-30, 33-37, 41-42 of 128. Nevertheless, the administrative judge relied, without further explanation, on K.H.'s affidavit to sustain specifications 1 and 2, even though the agency itself found K.H.'s affidavit no more credible than the appellant's affidavit. ID at 2-3.

¶8 Regarding specification 3, the record contains emails pertaining to an alleged loan between J.B. and B.E. *See* IAF, Tab 6 at 24-26 of 93. The existence of such a loan, if true, could undermine the administrative judge's determination that B.E. had "no reason" to lie about the extension. Again, the administrative judge failed to mention this evidence.

¶9 We recognize that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing and that the Board can overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Here, however, the administrative judge's findings regarding specifications 1-3 are not based on his assessment of the demeanor of the witnesses. We also recognize that the administrative judge's failure to mention all the evidence of record does not mean that he did not consider it in reaching his decision. *Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). An administrative

---

[4] The nontestimonial evidence in support of specification 2—namely, emails from K.H. to the appellant that he apparently did not respond to, *see* IAF, Tab 6 at 103-26 of 138—also does not lend credibility to either party. The appellant has asserted that he responded to K.H. by phone in order to better explain the situation, *see* IAF, Tab 44 at 11-12; PFR File, Tab 1 at 9, and there is no evidence or testimony to suggest that the appellant's telephone contact with her was insufficient or improper.

judge, however, should address relevant evidence on the material issues and provide reasons for accepting or rejecting the evidence. *Young v. Department of the Navy*, 53 M.S.P.R. 384, 386-87 (1992).

¶10 Although we have concerns about the administrative judge's assessment of the evidence regarding specifications 1-3, we need not decide whether the administrative judge erred in sustaining the specifications. As discussed below, the other specifications are sufficient to sustain the charge and the penalty. *See Alaniz v. U.S. Postal Service*, 100 M.S.P.R. 105, ¶ 10 (2005); *see also Luciano v. Department of the Treasury*, 88 M.S.P.R. 335, ¶ 10 (2001) (the Board need not address allegations of error concerning certain specifications of a charge because the sustained charges and specifications warranted the appellant's removal), *aff'd*, 30 F. App'x 973 (Fed. Cir. 2002).

Specification 4

¶11 Specification 4 alleges that the appellant committed time-card fraud or abuse when from April 23, to August 31, 2012, he: failed to provide correct information on official time and attendance records by not accounting for the actual number of hours worked each day; failed to request and receive approval for leave for the hours he did not work; and/or accepted pay for hours he did not work. IAF, Tab 5 at 6-7. According to the agency's analysis of the appellant's attendance over 93 days, the appellant did not enter the building at all on 10 days and arrived late on 67 days without adequate leave coverage. *See* IAF, Tab 6 at 46-47 of 128. Although there was no way to determine when he left for the day, the appellant, whose regular duty hours were from 8:00 a.m. to 4:30 p.m., sent his last email of the day after 3 p.m. on only 19 days. *Id.* Further, several coworkers attested that the appellant often arrived late, left early, took extended lunches, or was otherwise unaccounted for during the day. *See id.* at 5, 17 of 128, 48-49, 68-69, 73, 93 of 136. The deciding official found that the appellant failed to provide a reasonable explanation for his absences, without approved leave,

from the building. IAF, Tab 4 at 28-29. The administrative judge agreed, finding that the appellant and his supervisor lacked credibility insofar as they claimed that the appellant was performing his duties off-site whenever he was away from the office and that it was "inherently improbable" that the appellant, who testified that he did not keep an appointment book, had a good enough memory to know his appointments and obligations for days at a time but, when questioned afterwards, was unable to account for any of his movements. ID at 7-8.

¶12　　　The appellant claims that many of his duties were off-site and that he did not need to keep a ledger of his activities because "people organize differently." PFR File, Tab 1 at 13. However, where absence during work hours is shown, the burden is on the appellant to show that it was authorized. *See Avant v. Department of the Air Force*, 71 M.S.P.R. 192, 197 (1996). The appellant has not done so. *See* PFR File, Tab 1. Further, although it is likely that the appellant carried out some duties outside of the office, we agree with the administrative judge that it is unlikely that he would have been working outside of the office for hours and days at a time but not be able to recollect, or provide any evidence to account for, specifically where he was and/or what he was doing for even an hour of that time. *See* ID at 7-8; *see also* PFR File, Tab 1. Accordingly, we agree that this specification is supported by preponderant evidence.

Specification 5

¶13　　　Specification 5 alleges that the appellant used government resources to perform duties associated with his private company, which apparently put on plays at a local theater. IAF, Tab 5 at 7. According to the agency's analysis of the appellant's email usage, over half of the 328 emails he sent from April 21, through August 31, 2012, were not work-related. *See* IAF, Tab 5 at 7, Tab 6 at 52 of 93; *see also* IAF, Tab 33 at 10-24. In August alone, the agency's analysis shows that at least 70 out of 89 emails sent by the appellant were personal in nature and a great majority of these were related to his company's play, including

posters, flyers, invitations, solicitations to purchase tickets, draft media releases, and requests for local media involvement. *See* IAF, Tab 6 at 52 of 93, Tab 33 at 10-12, 18-24. The appellant also gave a phone interview to a local newspaper to promote his play while at work; the resulting article noted that the appellant was "calling from his day job cubicle" at the agency. IAF, Tab 6 at 100 of 128. The administrative judge found that the agency proved that the appellant misused his government computer to conduct extensive personal business and that, contrary to the appellant's assertions, the personal use was not reasonable or de minimus. ID at 8-9. On review, the appellant essentially argues that he did not do anything wrong.[5] *See* PFR File, Tab 1 at 14-15.

¶14 Although neither party provided a copy of the agency's computer use policy, the appellant referenced an "IT agreement" that allows employees to send personal emails during their lunch hour and breaks. *Id.* at 14. Even if this is an accurate characterization of the agency's policy, we note that the appellant sent personal emails throughout the day, not just during discrete break periods. *See* IAF, Tab 33 at 18-39. As discussed above, the record demonstrates that the appellant used government time and resources to promote his private business and that such use was not de minimus. As such, we agree with the administrative judge that preponderant evidence supports this specification.

Specification 8

¶15 Specification 8 alleges that from September to December 2012, the appellant failed to follow instructions and failed to cooperate with the acting director when he: arrived late, left early, and "disappeared" without telling her

---

[5] The appellant asserts, inter alia, that: everyone is allowed to use their email for personal purposes; he is a single parent so he may have had more personal emails than some other employees; there may have been more personal emails than work emails because he had been stripped of his official duties; there are numerous signs put up by other employees in the break room; and for the past 12 years, leadership had allowed him to use his government email to promote his play. PFR File, Tab 1 at 14-15.

that he was leaving;[6] planned an off-site holiday party for the office without consulting her; and failed to execute her instructions to establish an office filing system. IAF, Tab 5 at 9-10. The administrative judge sustained the specification, finding that the appellant was rude and insubordinate to the acting director, whom he found more credible than the appellant, and that his behavior towards her was unacceptable. ID at 9-14. On petition for review, the appellant argues that he did not do anything wrong.[7] *See* PFR File, Tab 1.

¶16      The administrative judge found the acting director more credible than the appellant and noted that she was an outsider to the EEO office, was brought in on an interim basis, and intended to retire as soon as a new EEO director could be found. ID at 12. The administrative judge observed that it was apparent that the appellant resented the fact that his prior supervisor was gone and that the acting director intended to more strictly enforce agency rules. ID at 12. The appellant's unacceptable behavior is well-documented in his emails to the acting director, which, as noted by the administrative judge, are rude, disrespectful, and contemptuous. *See* IAF, Tab 4 at 75-76 (Oct. 4, 2012), 77 (Jan. 2, 2013), 81-82 (Dec. 11, 2012), 83 (Nov. 19, 2012), 89 (Oct. 24, 2012), 91 (Oct. 23, 2012), 92-93 (Oct. 19, 2012); *see also* ID at 12. Accordingly, we find no basis to disturb the administrative judge's decision to sustain this specification.

---

[6] Although not raised by the appellant, we note that the time and attendance violations alleged in specification 8, which occurred between September and December 2012, and specification 4, which occurred between April 23, and August 31, 2012, do not present any merger concerns as the specifications are based on separate incidents of misconduct from different time periods. *See Mann v. Department of Health & Human Services*, 78 M.S.P.R. 1, 7 (1998) (the Board will merge charges if they are based on the same conduct and proof of one charge automatically constitutes proof of the other charge).

[7] The appellant asserts that: he did not refuse to follow instructions, but sought guidance from the acting director because she had told him to destroy sensitive files; the acting director would have issued him a reprimand or warning, which she never did, if he had actually been disrespectful to her or disobeyed an order; and it was past practice for him to organize a holiday party. PFR File, Tab 1 at 4-5, 9, 12-13, 15-16.

<u>The administrative judge correctly found that the penalty is reasonable.</u>

¶17     As set forth above, we have concerns about the administrative judge's decision to sustain specifications 1-3, but we need not resolve whether the agency proved those specifications because the remaining three sustained specifications involving time and attendance violations, misuse of government resources, and failure to follow supervisory instructions and failure to cooperate with a supervisor establish the charged misconduct and support the penalty of removal. *See Alvarado*, 103 M.S.P.R. 1, ¶ 16.   Where all of the agency's charges are sustained, but some of the underlying specifications are not sustained, the agency's penalty determination is entitled to deference and is reviewed only to determine whether it is within the parameters of reasonableness.  *Parker v. U.S. Postal Service*, 111 M.S.P.R. 510, ¶ 8, *aff'd*, 355 F. App'x 410 (Fed. Cir. 2009). Thus, in this appeal, we must determine whether removal is within the parameters of reasonableness.[8]

¶18     The Board has articulated factors to be considered in determining the propriety of a penalty, such as the nature and seriousness of the offense, the employee's past disciplinary record, the supervisor's confidence in the employee's ability to perform his assigned duties, and the consistency of the penalty with the agency's table of penalties and with those imposed on other employees for the same or similar offenses.  *Id.*, ¶ 10 (citing *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305 (1981)).   All of the factors will not be pertinent in every instance, and so the relevant factors must be balanced in each case to arrive at the appropriate penalty.  *Douglas*, 5 M.S.P.R. at 306.

---

[8] On review, the appellant does not challenge the reasonableness of the penalty.  PFR File, Tab 1.  The appellant also does not challenge the existence of a nexus between his misconduct and the efficiency of the service.  *See id*.; *see also* ID at 14.

¶19     On review, we find that the offenses underlying specifications 4, 5, and 8 are serious in nature and relate directly to the appellant's job duties.[9]  *See Spencer v. U.S. Postal Service*, 112 M.S.P.R. 132, ¶ 7 (2009) (the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibility, is generally the most important factor in assessing the reasonableness of a penalty).  First, the appellant's erratic attendance went to the very core of his responsibilities as a federal employee.  *See Davis v. Veterans Administration*, 792 F.2d 1111, 1113 (Fed. Cir. 1986) (an essential element of employment is to be on the job when one is expected to be there).  Moreover, although he was not explicitly charged with falsification, the appellant's conduct—claiming and receiving pay for days and hours he was absent from the building without approved leave—was inherently knowing and intentional[10] and goes to his reliability, veracity, trustworthiness, and willingness to ethically perform his duties.  *See Daniels v. U.S. Postal Service*, 57 M.S.P.R. 272, 285 (1993).  As noted by the administrative judge, the appellant's offense was particularly serious given his role as timekeeper.  *See* ID at 15.  Second, the appellant's misuse of government resources is also serious.  The Board has held that an employee, like the appellant, who conducts personal business while he is presumed to be performing the official duties of his position, violates the trust the agency has placed in him and destroys the confidence established in the employer-employee relationship.  *See Cohen v. Internal Revenue Service*, 7 M.S.P.R. 57, 61 (1981).  Third, it is well-settled that an employee's refusal to follow supervisory instructions constitutes serious misconduct that undermines

[9]  As an Administrative Assistant, IAF, Tab 4 at 14, the appellant provided administrative support for the EEO office, acted as timekeeper, and assisted with or managed the WRP program.  IAF, Tab 6 at 17-18.

[10]  We note that it is axiomatic that the appellant knew or should have known that he needed to request leave according to established procedures and only claim pay for hours and days he actually worked.

management's capacity to maintain employee efficiency and discipline. *See Redfearn v. Department of Labor*, 58 M.S.P.R. 307, 316 (1993).

¶20     In addition to the seriousness of the misconduct underlying specifications 4, 5, and 8, several aggravating factors weigh in favor of removal. The appellant's lack of work ethic and misuse of government time and resources to promote his play had the potential to undermine other employees' confidence in the EEO office and the public's confidence in the agency and in federal employees in general.[11] *See Douglas*, 5 M.S.P.R. at 305 (the notoriety of the offense or its impact upon the reputation of the agency is a factor to be considered). The deciding official's loss of confidence in the appellant's ability to perform his job is supported by the record and also weighs in favor of a more serious penalty.[12] *See id.* Moreover, the appellant's lack of remorse and failure to take personal responsibility for his misconduct shows poor rehabilitative potential.[13] IAF, Tab 4 at 41, 43-45; *see Neuman v. U.S. Postal Service,* 108 M.S.P.R. 200, ¶ 26 (2008) (rationalizations and lack of remorse indicate little rehabilitative potential and are aggravating factors). The deciding official properly considered mitigating factors as well, but found that the appellant's 17 years of federal service, lack of prior discipline, and the lack of discipline and control in the EEO office in the time prior to the disciplinary action were insufficient to mitigate the basic dishonesty inherent in the appellant's conduct. IAF, Tab 4 at 40-41, 45.

---

[11] The appellant's use of government time and resources to promote his private business was known to his coworkers and was reported in a local newspaper. *See* IAF, Tab 6 at 66-100 of 128.

[12] Specifically, the deciding official asserted that the appellant's failure to account for a large amount of time absent from the office, misuse of government time and resources for personal business, and failure to work with the acting director caused him to completely lose trust in the appellant's ability to perform his job. IAF, Tab 4 at 41.

[13] The deciding official explained that the appellant, inter alia, blamed the acting director, accused her of being a dictator, and explained that someone probably manipulated his records in the time and attendance system. IAF, Tab 4 at 39, 44.

¶21    Weighing all of the most relevant penalty factors together, we find that the mitigating factors are offset by aggravating ones, especially the nature and seriousness of the misconduct and the appellant's lack of remorse for his actions. Accordingly, we find that the deciding official's penalty determination was within the tolerable limits of reasonableness.

The appellant has not shown that the administrative judge committed error.

¶22    The appellant challenges the administrative judge's handling of his case, the "tone" of the hearing, and various purported inequities perpetrated against him during his appeal.  *See* PFR File, Tab 1.  However, as discussed below, the appellant has failed to show any adjudicatory error, much less demonstrate that any error adversely affected his substantive rights.  *See Karapinka v. Department of Energy*, 6 M.S.P.R. 124, 127 (1981) (an administrative judge's procedural error is of no legal consequence unless it is shown to have adversely affected a party's substantive rights).

¶23    The appellant asserts that the administrative judge erred by failing to adjudicate his "wrongful termination motion to the [administrative judge] to reject removal and reinstate appellant with back pay."  *See* PFR File, Tab 1 at 1-2; *see also* IAF, Tab 39.  However, we discern no error by the administrative judge because the appellant's motion was essentially seeking summary judgment, which the Board has no authority to render.  *Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 30 (2007).  Moreover, even if the administrative judge erred, the appellant was afforded multiple opportunities to present his arguments and he has failed to show or allege that anything in his motion would warrant a different outcome.  *See* PFR File, Tab 1; *see also Karapinka*, 6 M.S.P.R. at 127.

¶24    Next, the administrative judge did not err in failing to consider the appellant's retaliation claim, which, on review, he alleges was based on a successful EEO case against the agency in 2010, and on an EEO complaint that he was about to file before he was removed.  *See* PFR File, Tab 1 at 1-3.  In his

initial appeal, the appellant did not mention a prior successful EEO matter[14] but merely opined that the agency failed to conduct an independent investigation into its "suspicions about [his] actions" because the agency knew he was about to file an EEO complaint.[15] IAF, Tab 1 at 31. We find that this vague reference was insufficient to constitute a claim of retaliation or to trigger the administrative judge's obligation to apprise the appellant of his burden and methods of proof to establish the affirmative defense. *See Wynn v. U.S. Postal Service*, 115 M.S.P.R. 146, ¶¶ 10, 13 (2010). Furthermore, the appellant did not object to the administrative judge's order and summary of prehearing conference, which indicated that the appellant had not raised any affirmative defense.[16] IAF, Tab 35 at 1, 3.

¶25    The administrative judge also did not err by allegedly failing to consider that the appellant was mentally and emotionally "fragile" during his alleged improper interactions with the acting director. PFR File, Tab 1 at 5, 9. First, it does not appear that the appellant raised any defense of mental or emotional

---

[14] We need not consider the appellant's claim of retaliation based on a prior successful EEO claim, which he raises for the first time on petition for review, because he has not shown that he was unable to raise the argument below despite due diligence. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence). Further, we note that there is no evidence of any successful EEO claim by the appellant in the record and, according to the agency, there has never been a finding that the agency discriminated against the appellant. PFR File, Tab 7 at 5 n.1.

[15] The appellant made only cursory reference to retaliation in his initial appeal, asserting that the agency essentially rushed his removal because it was apparently aware that he was about to file an EEO complaint against the chief of staff (who is also the proposing and deciding official) for failing to respond to the appellant's memoranda complaining of a "hostile environment." IAF, Tab 1 at 31, 58-61, 63-65.

[16] The order and summary of the prehearing conference set forth the issues on appeal and ordered that, if any party took exception to any part of the summary, the party must state the exception and serve the objections to the Board and opposing party within 7 days of the order. IAF, Tab 35 at 1.

impairment below, and so we need not consider it now. *See Banks*, 4 M.S.P.R. at 271. Second, even if the appellant properly raised this defense below, it is insufficient to warrant mitigation of the penalty. While the Board may consider an appellant's medical condition in determining the appropriate penalty where it played a part in the charged conduct, the appellant has not alleged that his "fragile emotional and mental state" constituted a medical condition or explained how it precluded him from interacting with the acting director in an appropriate manner. *See Sherlock v. General Services Administration*, 103 M.S.P.R. 352, ¶ 12 (2006); *see also* PFR File, Tab 1 at 5, 9.

¶26     Lastly, the appellant argues that the administrative judge erred by allowing K.W., an agency human resources specialist, to submit a written declaration and to attend the hearing as the agency's civilian personnel advisor. PFR File, Tab 1 at 6-7. Specifically, he appears to contend that K.W.'s presence at the hearing and/or her declaration were improper and/or presented a conflict of interest because: (1) K.W. was the recorder at his oral reply to the proposed removal; (2) she had assisted the deciding official with the proposed removal; (3) her attendance required the appellant to defend himself against both the agency attorney and K.W.; and (4) she had been rejected as an agency witness at the prehearing conference.[17] *See id.* However, none of these allegations, even if true, establish adjudicatory error. An administrative judge has wide discretion to control the proceedings, including the authority to determine who may attend the hearing and to receive relevant evidence. *See* 5 C.F.R. §§ 1201.31, 1201.41(b). Moreover, the appellant has offered no evidence to establish that his substantive

---

[17] The agency sought to call K.W. as a hearing witness in order to testify about her role in advising management regarding the proposed removal. IAF, Tab 30 at 6. The administrative judge disapproved K.W. on grounds of relevancy. IAF, Tab 35 at 4. According to the agency, K.W.'s testimony might still be needed in rebuttal, but because she would be assisting at the hearing, she needed to testify before observing other witness testimony. PFR File, Tab 7 at 6-7. The administrative judge thus allowed K.W. to submit a declaration prior to the hearing. IAF, Tab 38 at 4-6.

rights were prejudiced by K.W.'s attendance at the hearing or by her declaration. *See Karapinka*, 6 M.S.P.R. at 127.

¶27     Accordingly, because none of the alleged errors affected his substantive rights, the appellant has failed to establish any adjudicatory error.

The appellant has failed to establish that the administrative judge was biased.

¶28     The appellant also appears to argue that the administrative judge showed bias against him by, inter alia, treating him more harshly than the agency, allowing the agency to introduce new evidence at the hearing, objecting to his questioning of the witnesses, allowing K.W. to attend the hearing, and by pushing the settlement agreement.  *See, e.g.*, PFR File, Tab 1 at 3, 6, 11, 13, 18-19, 22.

¶29     Even accepting the appellant's allegations as true, we find nothing improper in the administrative judge's conduct, much less evidence of "a deep-seated favoritism or antagonism that would make fair judgment impossible." *See Asatov v. Agency for International Development*, 119 M.S.P.R. 692, ¶ 13 (2013).  It is well-settled that an administrative judge is permitted to engage in frank settlement discussions with the parties, *Herman v. Department of Justice*, 119 M.S.P.R. 642, ¶11 (2013), and informing them of the relative strengths and weaknesses of their case does not indicate bias, coercion or any prejudgment or preconceived notions as to the appeal, *Chakravorty v. Department of the Air Force*, 90 M.S.P.R. 304, ¶ 8 (2001).  Further, an allegation of bias against an administrative judge must be supported by an affidavit.  *See Asatov*, 119 M.S.P.R. 692, ¶ 13.  The appellant has not supported his claims with an affidavit, and there is nothing in the record to support a finding of bias by the administrative judge. Thus, we find insufficient evidence to overcome the presumption of honesty and integrity that the administrative judge enjoys.  *See Simmons v. Small Business Administration*, 115 M.S.P.R. 647, ¶ 10 (2011).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems

Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                        _____
                                      William D. Spencer
                                      Clerk of the Board

Washington, D.C.



.