56 F.3d 84
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 David L. BOYER, Petitioner,
v.
DEPARTMENT OF the NAVY, Respondent.
 No. 94-3032.
 United States Court of Appeals, Federal Circuit.
 May 26, 1995.
Rehearing Denied; Suggestion
for Rehearing In Banc Declined
Aug. 8, 1995.
 
 Before ARCHER, Chief Judge, PLAGER and LOURIE, Circuit Judges.
 Opinion for the court filed by Chief Judge ARCHER, in which Circuit Judge LOURIE joins. Dissenting opinion filed by Circuit Judge PLAGER.
 DECISION
 ARCHER, Chief Judge.
 
 
 1
 David L. Boyer appeals the decision of the Merit Systems Protection Board (board), Docket No. DC0752930245-I-1,[1] affirming his demotion at the Department of the Navy (Navy or agency). We affirm.
 
 DISCUSSION
 I.
 
 2
 Boyer held a supervisory position, contract specialist, GM-15, with the Navy. After an investigation, on November 9, 1992, the Navy proposed that Boyer be demoted to a non-supervisory position and suspended without pay for 30 days for "inappropriate conduct by a Federal manager and supervisor." The notice to Boyer listed ten specific instances in support of the charge. The majority of the instances related to Boyer's sexual "joking" (including graphic sexual remarks and jokes in the presence of subordinates) or his tolerance of it as a supervisor.
 
 
 3
 Boyer responded by denying that certain of the instances had ever occurred and by asserting that some of the instances were not necessarily inappropriate or offensive. On December 21, 1992 the agency issued a final decision to demote Boyer to a non-supervisory GM-14 contract specialist position without the proposed suspension. The decision sustained eight of the instances of misconduct charged and partially sustained the other two. The decision specifically noted that Boyer was not charged with sexual harassment so there was no need to conclude his behavior offended anyone in order to sustain the demotion.
 
 
 4
 Boyer appealed to the board. At the hearing, Boyer called ten witnesses, the agency called five (four of the witnesses were called by both parties). In the initial decision issued after the hearing, the administrative judge (AJ) affirmed the decision of the Navy. The AJ noted that Boyer had "acknowledged on cross-examination that he was aware that certain forms of behavior are inappropriate in the workplace," including several of the instances of misconduct with which Boyer was charged. The AJ sustained all of the agency specifications of misconduct, finding "[m]uch of the appellant's evidence presented in refutation of the charges against him in actuality supports the agency's position."
 
 
 5
 The AJ also found the Navy's action was taken for such cause as will promote the efficiency of the service. The agency conceded that it "does not have a specific policy that identifies the inappropriate behavior with which [Boyer] was charged as improper conduct" but asserted that "the agency specifically requirees [sic] that employees conduct themselves within acceptable norms for the society." The AJ found that "[p]ortrayed even in the best light, the appellant's conduct was inappropriate and outside the norm of acceptable behavior for the workplace." The AJ, noting that the agency does not have a specific definition of the conduct charged, referred to agency regulations setting forth examples for penalty guidance, including a range of penalties from suspension to removal for disrespectful conduct, use of insulting, abusive or obscene language to or about other personnel. The AJ found that Boyer's penalty could have been sustained under that regulation and that, as a long-time supervisor, Boyer should have known he could be subject to disciplinary action for his conduct.
 
 II.
 
 6
 We review decisions of the board under a narrow standard of review prescribed by statute. We must affirm the board's decision unless it is demonstrated to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. Sec. 7703(c).
 
 
 7
 Boyer contends principally on appeal that the charge of "inappropriate conduct for a Federal manager and supervisor" does not exist and that the AJ impermissibly substituted a different charge in affirming the agency's decision. Citing Grubka v. Department of the Treasury, 858 F.2d 1570, 1576 (Fed. Cir. 1988), Boyer argues the agency's general charge "covers everything and touches nothing." Although we agree Boyer's argument has some merit, we are unpersuaded in this case.
 
 
 8
 It is uncontested that "inappropriate conduct for a Federal manager and supervisor" is not identified anywhere in the agency's guidelines as a basis for disciplinary action nor are the specific instances of misconduct alleged by the agency enumerated anywhere in the agency's employee literature as improper. We agree with the agency, however, that federal employees, and in particular those in a supervisory capacity, are expected to exercise good judgment, notwithstanding the lack of literal guidance from any agency rule, regulation, or other statement of agency policy. Under our precedents an agency is not required to specifically prohibit every type of misconduct. See Brousseau v. United States, 226 Ct. Cl. 199, 219, 640 F.2d 1235, 1247 (1981) (no written rule against organizing opposition to the policies of his superiors; supervisor's "common sense" should have forewarned him that his actions could lead to his demotion); accord Mings v. Department of Justice, 813 F.2d 384, 389-390 (Fed. Cir. 1987) (no written rule against writing derogatory letters about religious and ethnic groups); Brennan v. Department of Health and Human Services, 787 F.2d 1559, 1561 (Fed. Cir. 1986) (no written rule required the use of standardized office worksheets). The instances of misconduct alleged by the agency and sustained by the board in this case were of such a nature that they reflect unusually poor judgment for a supervisor. That they are not listed as a basis for disciplinary action cannot be construed as tacit agency approval for the conduct.
 
 
 9
 This case is distinguishable from our decision in Grubka where Grubka was demoted for, inter alia, failing to satisfactorily carry out certain broadly stated agency policies, such as "failure to foster a positive EEO climate." 858 F.2d at 1576. The court rejected the agency's position, noting that the agency failed to establish any regulation had been violated. Id. In Grubka, the court refused to sustain the agency because it was not clear what would constitute a failure to satisfy the broadly stated policy. By contrast, any person in a supervisory or managerial position in an agency would understand that the cited instances of sexual "joking" are inappropriate conduct for a supervisor and would warrant disciplinary action.
 
 
 10
 Boyer misconstrues the board's decision when he argues that the AJ substituted a different charge for the one actually charged by the agency. In the AJ's discussion of the appropriate penalty and its relationship to the efficiency of the service, the AJ referred to an agency regulation setting forth examples of the acceptable range of penalties for a comparable charge. The reference to a comparable charge for purposes of evaluating the agency's penalty was not a substitution of charges as Boyer contends. We have considered Boyer's other arguments on appeal, including the argument that the AJ abused her discretion in excluding certain of Boyer's witnesses, but we do not find them persuasive. Accordingly, we affirm the board's decision.
 
 
 11
 PLAGER, Circuit Judge, dissenting.
 
 
 12
 Though I share my colleagues distaste for inappropriate conduct in the workplace, particularly by supervisory personnel, it is one thing to teach, in light of current standards, old dogs new tricks, it is another to punish without an articulated standard against which to measure the offending conduct. This is not a case of perceived inadequate performance by a supervisor, leading to corrective action and, if continued and found uncorrectable, perhaps even to removal. Rather, this is a case of disciplinary action against an individual, taken for violation of rules pursuant to the statutory process for adverse actions.[1]
 
 
 13
 But there is no warrant in law for the action taken here, since by the Navy's own admission Boyer's verbal joking around falls short of sexual harassment, and there is no other pre-existing rule or standard alleged to be violated. The Government cannot make otherwise lawful, even though perhaps tasteless, conduct punishable after the fact. I must therefore respectfully dissent from an affirmance of the agency's action in this case.
 
 
 14
 We have held that agency charges must be made with a reasonable degree of specificity. Grubka v. Department of the Treasury, 858 F.2d 1570 (Fed. Cir. 1988). The majority's attempt to distinguish Grubka fails. In Grubka, this court held that the agency's charges of, inter alia, "failure to foster a positive EEO climate" violated no established standard and could not be sustained. Id. at 1576. As the court there observed regarding the generality of the allegation, "[t]his is a very general charge that as the old saying goes, 'it covers everything and touches nothing."' Id.
 
 
 15
 In the present case, the agency has cited no policy against telling jokes, even jokes in bad taste. The Navy has been known for ribald humor and language, as any veteran will attest. By today's standards such behavior may be considered tasteless, and offensive to some. The Navy is free to instruct its employees about what is now considered proper decorum in the workplace, and to provide guidance to them. It is not free to punish employees for conduct that has not been made punishable. In this case, as in Grubka, the agency has failed to show that it ever established the rules of behavior which it claims the employee violated.
 
 
 16
 Because Boyer is a civilian employee of the Navy, agency rather than military law applies to this case. Nonetheless, military law is instructive on the issue here. Members of the military may be held to what on its face is a rather vague standard of conduct. Article 133 of the Uniform Code of Military Justice (UCMJ) provides: "Any commissioned officer, cadet, or midshipman who is convicted of conduct unbecoming an officer and a gentleman shall be punished as a court-martial may direct." 10 U.S.C. Sec. 933 (1988). That superficially vague standard, however, is given substance and detail by the military community's long years of tradition, so that specific acts "'which have been recognized to be crimes and offences by the usages in the navy of all nations ... [shall be] punished according to the laws and customs of the sea."' Parker v. Levy, 417 U.S. 733, 747 (1974), quoting Dynes v. Hoover, 61 U.S. (20 How.) 65, 82 (1857). In light of that tradition, Article 133 is not void for vagueness under the due process clause of the Fifth Amendment. Parker v. Levy, 417 U.S. at 757.
 
 
 17
 The Navy's current efforts to be more sensitive to its diverse workforce may be commendable. But the Navy cannot claim long years of tradition in explication of "inappropriate conduct" as it applies to its civilian workforce, and besides military life and military law are different from civilian life and civilian law. "In civilian life there is no legal sanction -- civil or criminal -- for failure to behave as an officer and a gentleman; in the military world, Art. 133 imposes such a sanction on a commissioned officer." Id. at 749. The military, "a specialized society separate from civilian society," id. at 743, may require its members to behave according not only to military law, but to the commands of superiors, and, as in Parker, to rules nowhere explicitly articulated.
 
 
 18
 In contrast to the obedience that characterizes military life, we understand members of civil society to be at liberty. The bounds of that liberty are set forth by the law. Although there are non-legal bounds on a civilian's behavior, etiquette being one germane to this case, trespass of those bounds does not give rise to legal action. If the law is silent, we assume that the civilian's liberty is not yet at its end.
 
 
 19
 Boyer was not removed because of his poor performance. In fact, both the deciding official and the administrative judge noted Boyer's fine performance as a factor mitigating the severity of the action taken by the agency. Because the agency could not show that Boyer violated one of its established rules for which discipline may be imposed under the law, the agency's decision to demote Boyer is without warrant in law and should be reversed. I respectfully dissent from the judgment of the court holding otherwise.
 
 
 
 [1]
 The May 28, 1993, initial decision issued by the administrative judge became the final decision of the board on September 15, 1993 when it denied Boyer's petition for review
 
 
 [1]
 See 5 U.S.C. Sec. 7512(3) (1988) ("This subchapter applies to ... a reduction in grade")