**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| NICHOLAS SENTELL MCMILLAN, Appellant, | DOCKET NUMBER DC-0752-18-0458-I-1 |
| v. | |
| DEPARTMENT OF AGRICULTURE, Agency. | DATE: June 26, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Ronica Scales, Esquire, and Shaun C. Southworth, Esquire, Atlanta, Georgia, for the appellant.

Valerie Neris and Joshua N. Rose, Esquire, Washington, D.C., for the agency.

Gretchen M. McMullen, Mount Rainier, Maryland, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to supplement the administrative judge's analysis of one of the charges, address the appellant's affirmative defenses, and amend the nexus analysis, we AFFIRM the initial decision.

## BACKGROUND

The appellant was employed by the agency as a GS-9 Lead Consumer Safety Inspector (CSI) at Sanderson Farms in North Carolina. Initial Appeal File (IAF), Tab 6 at 18, 41. The agency asserts that, while off duty on June 23, 2017, he carried a pistol into the parking lot of Smithfield Packing,[2] another agency-inspected facility in the area of the appellant's duty station, and that he used his agency credentials to gain access to the parking lot. *Id.* at 26. It asserts that the appellant went to the parking lot to meet his ex-fiancée, who also worked for the agency and was assigned to Smithfield Packing, and ultimately decided to follow her home. *Id.* At the appellant's ex-fiancée's apartment complex, the appellant encountered his ex-fiancée and her male friend, who was also an agency

---

[2] The record reflects an inconsistency regarding the name of the Smithfield establishment. In some instances, it is referred to as "Smithfield Packing," and in other instances, it is referred to as "Smithfield Foods." IAF, Tab 6 at 20, 26. For clarity, we refer to the establishment as Smithfield Packing in this Final Order.

employee assigned to Smithfield Packing.[3]  *Id.*  While there, the agency asserts that the appellant was involved in an altercation during which he brandished a weapon.  *Id.*

Thereafter, the male coworker filed a report of workplace violence with the agency.  *Id.* at 45.  The agency investigated the matter, *id.* at 35-39, and ultimately proposed the appellant's removal based on one charge of inappropriate conduct (two specifications) and one charge of conduct unbecoming a Federal employee (one specification), *id.* at 25-30.  Following an oral and written response, IAF, Tab 1 at 52, Tab 6 at 19, 24, the deciding official issued a final decision removing the appellant from Federal service, effective March 30, 2018.  IAF, Tab 6 at 19-23.

The appellant appealed his removal to the Board, arguing that he was wrongfully removed and that the agency action was due to discrimination on the basis of sex and race.  IAF, Tab 1 at 5.  After he withdrew his request for a hearing, the administrative judge issued an initial decision on the written record.  IAF, Tab 31, Tab 34, Initial Decision (ID).  The administrative judge found that the agency proved both specifications of the inappropriate conduct charge and the single specification of the conduct unbecoming a Federal employee charge.  ID at 8-10.  He also found a nexus between the sustained charges and the efficiency of the service and that the penalty of removal was reasonable.  ID at 10-15.  He did not address the appellant's affirmative defenses.

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency proved both charges by preponderant evidence.

Charges of inappropriate conduct and conduct unbecoming a Federal employee have no specific elements of proof; they are established by proving that the appellant committed the acts alleged in support of the broad label.  *See*

---

[3] There appears to be some debate as to whether, at the time of the incident, the appellant and his ex-fiancée had already broken off their engagement, or if that occurred after the incident.  IAF, Tab 6 at 42, 49.

*Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010) (considering the charge of "conduct unbecoming a Federal employee"); *Alvarado v. Department of the Air Force*, 103 M.S.P.R. 1, ¶ 22 (2006) (considering the charge of "improper conduct"), *aff'd*, 626 F. Supp. 2d 1140 (D.N.M. 2009), *aff'd*, 490 F. App'x 932 (10th Cir. 2012); *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202 (1997) (stating that an agency need not affix any label to its charges and can instead describe actions that constitute misbehavior in narrative form and have its discipline sustained if the efficiency of the service suffers because of the misconduct). As discussed below, we agree with the administrative judge that the agency proved these charges by preponderant evidence.

> *The agency proved specification 1 under the inappropriate conduct charge, alleging that the appellant brandished a weapon.*

The first specification of the inappropriate conduct charge alleged that on June 23, 2017, the appellant brandished a weapon during the altercation outside of his ex-fiancée's home. IAF, Tab 6 at 26. The specification is preceded by a more detailed narrative, which summarizes the appellant's, his ex-fiancée's, and the male coworker's accounts of the incident. *Id.* at 25-26.

In a statement provided during the agency investigation, the appellant claimed that, on the night in question, he went to the Smithfield Packing facility and waited for his ex-fiancée to leave work, intending to surprise her, but that he changed his mind and decided to follow her home and speak with her there instead. *Id.* at 42. He stated that when he arrived at her apartment, she and the male coworker were standing outside of their cars and that he exited his car with a pistol in his pocket. *Id.* at 43. He stated that he addressed the male coworker by name, but that the male coworker denied that the name the appellant called him by was his, so the appellant asked him to take out his wallet and show him identification. *Id.* He asserted that the male coworker told him that he did not have any identification and that he was at the apartment complex to visit his

sister.  *Id.*  The appellant claimed that the male coworker got back in his car and "backed up real fast."  *Id.*  He claimed that he believed the male coworker was going to hit him with his car, so he pulled the pistol from his pocket and pointed it at the male coworker because he "felt threatened."  *Id.*  The appellant denied pointing a weapon at his ex-fiancée because he "still love[d] her."  *Id.*

In the male coworker's statement, he stated that he was involved in the altercation on June 23, 2017.  *Id.* at 46.  He asserted that the appellant's ex-fiancée expressed concern for her own safety going home in the early hours of the morning and asked him as a friend and coworker to follow her home.  *Id.*  He claims that he followed her to the parking lot of her apartment complex and that when he got out of his car, the appellant approached him with a pistol, demanding that he tell the appellant who he was and that he turn over his wallet and identification.  *Id.* at 46-47.  The male coworker stated that he believed the appellant was "drunk or high on something."  *Id.* at 47.  He stated that he provided the appellant with a name that was not his own and that the appellant then turned and pointed the pistol at his ex-fiancée, asking who the male coworker was.  *Id.* at 46-47.  The male coworker then claimed he left the scene, called 911, and reported that an altercation occurred at a BP gas station.  *Id.* at 47.  His statement acknowledged that his report to the police was inaccurate regarding the location of the incident, but explained that he "wanted to shield [his] own family from becoming involved in this dangerous situation."  *Id.*  He also stated that he had marital issues at the time and did not want his wife to learn of the incident.  *Id.*

In the appellant's ex-fiancée's statement, she claimed that she had begun to fear the appellant because he drank a lot and had shown her that he owned at least two guns.  *Id.* at 49.  She stated that, on the night of the incident, she asked her male coworker to follow her home to ensure that she arrived safely.  *Id.* at 50.  She claimed that, before she exited her vehicle, the appellant "stuck the gun in [her] face and asked [her] why he shouldn't just shoot [her] then."  *Id.*  She stated

that the appellant was talking and acting drunk. *Id.* She further stated that, at some point during the altercation, the male coworker got out of his car and the appellant pointed the pistol at him. *Id.* She also stated that the appellant and the male coworker were arguing over the male coworker's identification. *Id.*

The administrative judge considered these three statements, as well as a compact disc (CD) of the appellant's separate statements to agency investigators and a police detective in July 2017. ID at 2-8; IAF, Tab 29, CD. On the CD, the appellant admitted that he had the pistol out of his pocket when he approached his ex-fiancée and the male coworker, and he explained that he had drawn the weapon because he was emotional, upset, and fearful that his ex-fiancée was seeing another man. CD. Based on all of these statements, the administrative judge found that the agency proved by preponderant evidence that the appellant brandished a pistol on June 23, 2017 in the presence of his ex-fiancée and the male coworker. ID at 8. He further found that the appellant had no justification for displaying a drawn weapon, and he sustained the charge. *Id.*

On review, the appellant argues that North Carolina is an "open carry" state where guns may be carried even when they are plainly visible. PFR File, Tab 1 at 4. He further argues that the "criminal offense for brandishing" requires that one arm himself with an unusually dangerous weapon for the purpose of terrorizing others. *Id.* He asserts that the administrative judge's findings that he pulled the gun out of his pocket because he was "emotional, upset, and fearful that his ex-fiancée was seeing another man" are insufficient to meet North Carolina's criminal standard. *Id.* at 4-5.

The appellant's argument is without merit. The agency did not charge him with a violation of North Carolina criminal law, but rather, with inappropriate conduct. IAF, Tab 6 at 25-26. Thus, the agency was not required to prove the elements of the criminal statute; as discussed above, it was only required to prove that the appellant committed the acts alleged in support of the broad "inappropriate conduct" label. *See Canada*, 113 M.S.P.R. 509, ¶ 9. We have

reviewed the evidence, and, as explained below, we agree with the administrative judge that the agency proved that the appellant engaged in the conduct laid out in the narrative. *See Otero*, 73 M.S.P.R. at 202.

The appellant's statement conflicts with the material portions of his ex-fiancée's and the male coworker's statements, which are largely consistent with each other. IAF, Tab 6 at 41-52. When, as here, there are conflicting statements concerning the appellant's conduct, and it is impossible to believe both sides, an administrative judge must make credibility determinations to properly resolve the case. *Vicente v. Department of the Army*, 87 M.S.P.R. 80, ¶ 7 (2000). Although the administrative judge considered all of the statements, he did not make any explicit credibility findings. ID at 2-8. Rather, by relying on the written record due to the absence of a hearing and finding that the agency proved the specification, he implicitly credited the appellant's ex-fiancée's and the male coworker's statements. ID at 8. Generally, the Board does not owe deference to such incomplete findings. *See Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004) (explaining that the Board does not owe deference to an administrative judge's credibility determinations when they are incomplete, inconsistent with the weight of evidence, and do not reflect the record as a whole). As such, we assess the witnesses' credibility below. *See Deskin v. U.S. Postal Service*, 76 M.S.P.R. 505, 510 (1997) (stating that the Board may substitute its own credibility determinations for an administrative judge's explicit or implicit credibility findings when those findings are not based on witness demeanor).

Here, both the appellant's ex-fiancée's and male coworker's statements are consistent with each other in claiming that the appellant brandished a weapon during the altercation. IAF, Tab 6 at 46-47, 50. Although the male coworker admits to making a prior inconsistent statement regarding the location of the incident, *id.* at 47, his reason for doing so—that he did not want his wife to learn of the altercation—seems inherently probable. Regarding the appellant's

statement, we note that he previously made an inconsistent statement wherein he admitted to initially having the pistol out of his pocket. *Id.* at 43; CD. Further, the appellant's explanation that he felt threatened when the male coworker returned to his car and backed up quickly is inherently improbable, as there is no evidence that he was in close proximity to the coworker's vehicle or that the male coworker had a weapon that would lead the appellant to justifiably feel threatened. Accordingly, we supplement the initial decision to find the appellant's statement to be less credible than his ex-fiancée's and the male coworker's statements, *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (stating that prior inconsistent statements, consistency with other record evidence, inherent improbability of a statement, and possibility of bias are relevant factors in assessing credibility); *White v. Department of Housing & Urban Development*, 95 M.S.P.R. 299, ¶¶ 27, 31 (2003) (applying the *Hillen* factors, which are generally used for assessing witness credibility at a hearing, to an appeal decided on the written record with no hearing), and we agree with the administrative judge that the agency proved this specification.

> *The agency proved specification 2 under the inappropriate conduct charge, alleging that the appellant improperly presented his agency credentials.*

The second specification of the inappropriate conduct charge alleged that the appellant improperly presented his agency credentials to gain access to an agency-inspected facility while off duty. IAF, Tab 6 at 26. The administrative judge considered the appellant's statement admitting that he used his agency credentials to access the facility while off duty and the agency's investigatory report. ID at 8-9. He found that the charged conduct was undisputed, and he sustained the specification. *Id.*

On review, the appellant argues that he did not know that he was not permitted to use his credentials to access an agency-inspected facility while off duty and that the agency failed to reference any law, rule, or regulation that he

violated. PFR File, Tab 1 at 5-6. The appellant's argument is unconvincing, as there was no intent element included in the specification. IAF, Tab 6 at 25-26; *see Otero*, 73 M.S.P.R. at 202 (stating that a charge is viewed in light of the accompanying specifications and should not be technically construed). Even if the appellant was unaware of any relevant policy, it is undisputed that he displayed his credentials to gain access to an agency-inspected facility while not on official duty.[4] We agree with the administrative judge that the agency proved this specification, and we discern no reason to disturb the initial decision in this regard.

> *The agency proved the conduct unbecoming a Federal employee charge, alleging that the appellant carried a pistol onto an agency-inspected facility.*

The conduct unbecoming a Federal employee charge alleged that the appellant carried a pistol onto the premises of an agency-inspected facility and that his position did not require that he carry a weapon while on duty. IAF, Tab 6 at 26. The agency noted that its regulation 4070-735-001, Paragraph 20(e) states that, in accordance with 18 U.S.C. § 930 and its exceptions, "every employee is prohibited from knowingly possessing or causing the presence of a firearm or other danger weapons in a Federal facility (i.e. a building or part thereof, owned, or leased by the Federal [G]overnment, where Federal employees are regularly present for the purpose of performing their official duties)." *Id.* at 67-68. In a sworn statement, the appellant admitted that he had his pistol in his pocket when

---

[4] The apparent lack of any direct policy regarding the appropriate use of agency-issued credentials is not dispositive. The Board has found that an agency is not required to describe in detail all potentially prohibited employee conduct. *Goldstein v. Department of the Treasury*, 62 M.S.P.R. 622, 627 (1994), *vacated and remanded on other grounds*, 62 F.3d 1430 (Fed. Cir. 1995) (Table). The creation of such all-encompassing policies would not be feasible. *See Brown v. Federal Aviation Administration*, 15 M.S.P.R. 224, 233 (1983), *rev'd in part on other grounds*, 735 F.2d 543 (Fed. Cir. 1984) (Table). Rather, an agency may reasonably require Federal employees to exercise good judgment, notwithstanding a lack of literal guidance from an agency rule, regulation, or other statement of agency policy. *Boyer v. Department of the Navy*, 56 F.3d 84, *2 (Fed. Cir. 1995) (Table).

he was in the Smithfield Packing parking lot. *Id.* at 42. The administrative judge found that it was undisputed that the appellant carried a pistol onto an agency-inspected facility, and he sustained the charge. ID at 10.

The appellant does not appear to dispute this charge on review. PFR File, Tab 1. We have reviewed the record, and the conduct at issue is not in dispute.[5] Therefore, we discern no reason to disturb the initial decision in this regard. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and reached well-reasoned conclusions).

<u>The appellant failed to prove his affirmative defenses.</u>

On his initial appeal form, the appellant asserted that his removal was the result of race and sex discrimination. IAF, Tab 1 at 5. The administrative judge notified the appellant of his burden of proving this affirmative defense, IAF, Tab 25 at 2-3, but the appellant did not present any evidence on the issue, and the administrative judge did not address it in his initial decision. Nor does the appellant raise the matter on review. We find that the appellant has not shown that race or sex discrimination was a motivating factor in his removal. *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-22 (holding that, to prove a claim of discrimination under Title VII, the appellant must prove that discrimination was at least a motivating factor in the agency's action).

<u>The agency established a nexus between the charged misconduct and the efficiency of the service.</u>

An agency may subject an employee to an adverse action only for such cause as will promote the efficiency of the service. 5 U.S.C. § 7513(a). The

---

[5] We recognize that, strictly speaking, the Smithfield Packing facility and its adjoining parking lot is not a Federally owned or leased facility and thus the agency regulation does not precisely apply. We also recognize, however, that the agency did not charge the appellant with violating this regulation, but rather alleged that he carried a pistol onto the premises of an agency-inspected facility. IAF, Tab 6 at 26. The appellant does not deny that allegation and does not argue that the agency was required to prove a violation of the agency regulation.

issue under this standard is whether there is a nexus between the charge and the efficiency of the service. *Scheffler v. Department of the Army*, 117 M.S.P.R. 499, ¶ 9 (2012), *aff'd*, 522 F. App'x 913 (Fed. Cir. 2013). This means that there must be a clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish his duties satisfactorily or some other legitimate government interest. *Id.*

Regarding the specification concerning the brandishing of a weapon, the administrative judge concluded that "the appellant's unjustified display of a pistol is a criminal act" and that "[s]uch misconduct creates a nexus with the efficiency of the service." ID at 11. Regarding the specification concerning the appellant's use of his agency credentials and the charge concerning his possession of a pistol on the premises of an agency-inspected facility, the administrative judge concluded that because both occurred "at the appellant's duty location," the agency established that the misconduct affected the efficiency of the service. *Id.*

On review, the appellant argues that the administrative judge is incorrect because he "did not violate any law." PFR File, Tab 1 at 6. He also claims that because the agency failed to prove the second specification of the inappropriate conduct charge, there was no other basis to find that a nexus existed. *Id.* We find that the administrative judge's analysis is flawed; the record does not reflect that the appellant was charged with or convicted of a crime, nor does it reflect that he misused his agency credentials or possessed a pistol at *his* duty location. IAF, Tab 6 at 26. Rather, these incidents occurred at another agency-inspected facility at which he was not stationed. *Id.* at 26, 41. Nevertheless, we agree with the administrative judge's ultimate finding that the agency proved that there was a nexus between the appellant's misconduct and the efficiency of the service.

An agency may show a nexus between off-duty misconduct and the efficiency of the service by three means: (1) a rebuttable presumption in certain egregious circumstances; (2) preponderant evidence that the misconduct adversely affects the appellant's job performance or the agency's trust and

confidence in the appellant's job performance; or (3) preponderant evidence that the misconduct interfered with or adversely affected the agency's mission. *Kruger v. Department of Justice*, 32 M.S.P.R. 71, 74 (1987).

Here, the deciding official stated that the appellant's "supervisor's confidence in [the appellant's] ability to be effective in [his] job and to follow the rules consistently has suffered because of [his] conduct." IAF, Tab 6 at 21. Regarding the appellant's use of his agency credentials, the deciding official also stated that a nexus existed between the conduct and the efficiency of the service because, although off duty, he showed his credentials to a guard at the Smithfield Packing facility, an agency-inspected facility, "to gain access to an establishment to which the general public may not have such access." *Id.* at 20. Regarding the charge of conduct unbecoming a Federal employee, the deciding official found that the appellant's action of bringing a pistol to an agency-inspected facility was a "direct violation" of an agency directive, which prohibited him from possessing a pistol at the Smithfield Packing facility. *Id.* Although the appellant argues on review that he did not possess a pistol inside the facility because he only entered the parking lot of the facility, PFR File, Tab 1 at 6, we find no basis to differentiate between an agency-inspected facility and its parking lot. Accordingly, we find that, because the incident regarding the misuse of the appellant's agency-issued credentials and the possession of a pistol at the Smithfield facility both occurred on agency-inspected premises, the agency has established nexus. *See Franks v. Department of the Air Force*, 22 M.S.P.R. 502, 504-05 (1984) (finding nexus when an incident involving off-duty misconduct occurred on the premises of the employer, presented a possible danger to the appellant and others, and involved the use of agency personnel for the purpose of dealing with the appellant's conduct).

Regarding the specification concerning the brandishing of a weapon, even though the incident occurred off agency premises and while the appellant was off duty, it nonetheless involved two other agency employees. IAF, Tab 6 at 26. We

find that this, in addition to the general nature of the misconduct and the deciding official's statement that the appellant's supervisor lost confidence in the appellant's ability to be effective in his job and to follow the rules consistently, is sufficient to establish nexus. *See Kruger*, 32 M.S.P.R. at 74. We modify the initial decision to reflect this analysis.

<u>The penalty of removal is reasonable.</u>

When, as here, all of the charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 11 (2010). The Board's function is not to displace management's responsibility or to decide what penalty it would impose, but to assure that management's judgment has been properly exercised and that the penalty selected by the agency does not exceed the maximum limits of reasonableness. *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 20 (2001); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeds the bounds of reasonableness. *Stuhlmacher*, 89 M.S.P.R. 272, ¶ 20.

Here, the deciding official included in the removal decision a full analysis of the *Douglas* factors. IAF, Tab 6 at 20-21. She considered the nature and seriousness of the charges, stating that the appellant demonstrated a "total disregard for agency directives, policies[,] and regulations" and that his actions were "egregious and contradictory to what is expected of a Federal employee." *Id.* at 20. She also considered that the appellant's position as a Lead CSI was "one of prominence and position of public trust" and that the appellant's supervisor's confidence in his ability to be effective in his job and follow agency rules had suffered because of the misconduct. *Id.* at 20-21. She considered that the appellant knew or should have known that he was prohibited from having a

pistol at agency-inspected facilities and that it was "unethical and improper to use [G]overnment credentials for unofficial business related reasons." *Id.* at 21. She also did not believe that the appellant had a potential for rehabilitation and considered that the penalty of removal was consistent with those imposed on other employees for the same or similar offenses and with the agency's table of penalties. *Id.* She considered potential mitigating factors, *id.* at 20-21, but determined that removal was the appropriate penalty, *id.* at 21. In the initial decision, the administrative judge found that the deciding official properly considered the relevant *Douglas* factors. ID at 15.

On review, the appellant argues that the penalty of removal was too "extreme" given that his actions "were not intentional." PFR File, Tab 1 at 6. He again asserts that there is no evidence that the parking lot of the facility was owned or leased by the agency or even restricted to agency employees. *Id.* He further asserts that he had no past disciplinary record, had been employed for more than 11 years as a Federal employee, and had "above fully successful" performance ratings. *Id.* at 7. The deciding official considered these factors, but nonetheless found removal to be the appropriate penalty. IAF, Tab 6 at 20-21. The appellant's mere disagreement with the weight the deciding official afforded to each *Douglas* factor provides no basis to disturb the initial decision. *See Kirkland v. Department of Homeland Security*, 119 M.S.P.R. 74, ¶ 25 (2013) (explaining that the issue in determining whether the Board should exercise its mitigation authority is not whether the *Douglas* factors could have been weighed differently but whether the agency considered the relevant *Douglas* factors and reasonably exercised management discretion in making its penalty determination).

Because the deciding official properly considered the *Douglas* factors, we only review the penalty to determine whether it is reasonable. *See Stuhlmacher*, 89 M.S.P.R. 272, ¶ 20. We find that, due to the seriousness of the appellant's misconduct, the nature of his position as one of prominence and public trust, the fact that the appellant's supervisor lost confidence in his ability

to be effective in his duties, and the consistency of the penalty with the agency's table of penalties, IAF, Tab 6 at 70, the penalty of removal is reasonable. *Martin v. Department of Transportation*, 103 M.S.P.R. 153, 157 (2006), *aff'd*, 224 F. App'x 974 (Fed. Cir. 2007) (stating that, in assessing whether the agency's selected penalty is within the tolerable limits of reasonableness, the most important factor is the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities); *Douglas*, 5 M.S.P.R. at 305. Accordingly, we will not disturb the agency's selected penalty of removal.

We have considered all of the appellant's arguments on review but have concluded that a different outcome is not warranted. Accordingly, we DENY the appellant's petition for review and AFFIRM the initial decision except as modified herein.

## NOTICE OF APPEAL RIGHTS[6]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[7]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.